Your Honor, this is the second case of the morning called 2-11-1292 Bond Kildeer Marketplace, LLC v. CBS Outdoor, Inc. On behalf of the Appalachian Cross-Atlantic CBS Outdoor, Mr. Robert Weber On behalf of Bond Kildeer Marketplace, the Appalachian Cross-Atlantic, Mr. Steven Segal Good morning, Counsel. Mr. Weber? Good morning, Your Honor. Good morning. As he said, Robert Weber on behalf of CBS Outdoor and with me at the Counsel table is Mitch Mattson of CBS Outdoor. To start, I want to emphasize a couple of factual issues that I'm not sure were covered in the brief. I showed these to Counsel. These are in evidence. The property... When you refer to these, because this is being recorded, Counsel, you're holding up a couple diagrams? Is that a poster board? A poster board with raised pictures of exhibits that were entered in the record before the trial judge. The first one is Exhibit to the Judgment Order and Exhibit A to the Lease that depicts the property that is the subject of the lease, which is this rectangular piece that is on Rand Road but off of Plum Grove Road. It does not go to the corner. It's just that piece of property that is now part of the bond property, which is an 8.3-acre development, so that the property that we're talking about is actually a portion of this property. It does not go to Plum Grove Road. It's just the westerly portion of this property. You're pointing to an area which is like a finger area. Is that right? Correct. That was in the first diagram. Yes. The second diagram is the Exhibit to the Complaint, Exhibit 3 to the Complaint, and shows the planned development for the whole 8.3-acre bond development, of which the subject property is a portion. And there's a building on that development, but there's not a building on the property. Correct. There are buildings on the development. The subject property is all a parking lot. The subject property is all a parking lot, and I'm showing you now an exhibit to an enlargement of a photograph to my motion to vacate the judgment and for a new trial, which shows the subject billboard. It shows the billboard post to be on the parking lot at the very edge in the paved portion, and there's no building. The trial court made, reading four errors combined, that this court can rectify because this is a de novo review. The court erred in finding that Section 10 of the lease is clear and unambiguous and requires a four-walled structure to be erected before the lease could be terminated. More importantly, though, the court erred in not recognizing that although it rejected CBS's contention that we needed a four-walled structure to be put where the billboard is, the court did not recognize that our interpretation is reasonable. What language in Section 10 of the lease supports your interpretation? The language in Section 10 is if the lessor is to improve the unimproved property by erecting thereon a permanent resident, private, commercial, or residential building, such building to be constructed upon the location where the lessee's sign is presently located. There are four phrases in there, improve the unimproved property. So improve means to do something to the unimproved property. Then the next phrase is by erecting a building, so that the word building and improve are not the same. Building is a type of improvement. It is not a parking lot. So the lease says you have to improve the unimproved property by erecting a building, and that building then is to be constructed. So you're erecting a building, raising it up. You're constructing that building where the signs are located. Those words are what support our contention. And I am saying, number one, the trial judge made a mistake in not recognizing the clear, unambiguous meaning of those words, and then he said your interpretation isn't even reasonable. For had he said there was a reasonable interpretation after having determined that Bond's interpretation was reasonable and was the actual interpretation, he would then have been confronted with two reasonable interpretations of the phrase. So the trial court equated, you're saying, when the trial court went off the track, is he equated a parking lot as an accessory to be the equivalent of an accessory building is what the trial court felt. I think he went a little further. He used the word an accessory, which this lease doesn't say. He equated it with a building. And he's saying this parking lot is a building because the lease says it's a building. And you're saying a building, the common definition of any building is a walled structure. A parking lot cannot be a building by definition. Yes. The way it's used in this lease, you have the building being used as a noun. Erect a building. Construct a building. It's the object of a noun, of a verb. The way the court used it and the way Bond is using it, they are equating building with a verb of any improvement. And I pointed out that the way they used the word improve in this lease, improve means to make something better, but improve it by erecting a building. So it isn't by erecting a parking lot or by improving by improving with a parking lot. There could be no building where the sign is. Based on the setbacks now, I understand they're different than what they were, but there could be no building, a four-walled structure where the sign is located presently, correct? Yes, Your Honor. Okay. So basically your sign would be there then for the next 20 years, the duration of the renewed lease, correct? Under the lease, it could be there for 20 years. There are other things that can happen, as I suggested to the trial judge. Bond can come to us and say, let's make a deal. The village can come and say, your sign has to go. We have this ordinance, and we'll pay you just compensation as the state law requires. So the sign does not have to be there for 20 years. We have a right to keep it there unless there are some intervening events. Now, would leaving it there render the property undevelopable? No. I mean, it's already developed. I mean, they have their parking lot wrapped around this. They have their buildings going up. It's not undevelopable, and nobody has said to us or to the court that the village has not issued occupancy permits. It's not in the record that the village has refused to issue occupancy permits. Okay. If part of the building had been on the subject property, and then they wanted to put up a parking lot where the sign is, I mean, under the cases cited by opposing counsel, doesn't the building have to include the land that's, you know, pertinent for the use and enjoyment of that building? Not necessarily. The way we read this is that if the sign and a building can coexist safely, functionally, that they can coexist because the next sentence in the lease after the one we've been talking about is if the new construction has begun and any portion of the property are not to be utilized for such building, then the lessee, CBS, has the option to use the remaining portion on the same terms and conditions of this agreement. So the lease provides that if they can coexist after the construction is done, then we can come in and put our sign up. But we don't have to because the sign is there and there's nothing in conflict with it. No building. Counsel, I think we understand the argument of the building. However, would you acknowledge that if we were to find that the billboard had become illegal, quote-unquote, by virtue of Section 8 of the Highway Act, we would never get to the issue of the building? If you were to find that it was illegal... Right. Then the plaintiffs would have the right to terminate the lease, would they not? Yes, they would. I mean, they would. We'd have an argument over that if I don't think we're right to make that decision, but yes. If the sign was determined to be illegal, then they would have a right to terminate the lease. And we wouldn't even get into the issue of a wall structure or building, would we? No. So what about that? I mean, the argument is here, Section 8 says that if they were to renew the permit for such a sign, when 60 days after the change of ownership, any permit not so renewed shall become void. Yes. So what do you make of that phrase, void having a common meaning of no legal effect, a nullity? First of all, we start out with shall become. Shall, in many instances, does not mean mandatory. It could mean permissible. It doesn't mean it has to be done. Then you look at IDOT's interpretation, the regulations that IDOT has issued pursuant to the Highway Advertising Control Act. And one of the ways that a court would determine the meaning of a statute is how the enforcing agency reads it and enforces it. Look at the IDOT regulations, which provide that it said, Section 8 says any permit not so renewed shall become void. Shall become void. IDOT then issued a regulation that provides for a 30-day notice of the violation, even for an unpermitted sign, not a sign that's permitted. But even if the sign had no permit, IDOT is going to issue a notice that you are not in compliance and you have 30 days to come in compliance. And then it says any permit or registration not so renewed shall become revocable in accordance with the provisions of subpart C. You're absolutely correct. The law is clear. A court is to give substantial weight and deference to the interpretation of an ambiguous statute by the agency that's charged with administering that. I think that's basic hornbook law. Yes. However, and there might be another argument. I'm just sort of playing devil's advocate here for a moment. That only applies if they could look closely at the case law where the statute is considered to be ambiguous. So shall become null and void. If we were to find it's not ambiguous, we would not have to give deference to the administrative agency. You understand that? I understand. It only comes into play when it's considered to be ambiguous. Yes, I agree. But the word shall become doesn't mean is right now, shall become, and the agency has interpreted that to mean they put a process in place for when it will become void. Other than the agency's interpretation, do you have any decided cases that interpret shall become in that manner as permissive, not mandatory? Not as relates to the IDOT's regulations. So our point is that the plain meaning of the phrase is improve the property, erect a building, building to be constructed. Using the dictionary interpretations leads only to one meaning, and the court was mistaken in not determining that was the plain unambiguous meaning. And then the court compounded that error by not even recognizing that we were reasonable. For had he recognized that we had a reasonable interpretation after having found that Bob's interpretation was reasonable, he would have then had, by law, an ambiguity where he would have had to have conducted an evidentiary hearing. Didn't you argue at the hearing before the court that both sides argued that this lease provision was clear and unambiguous? Yes. So how are we arguing now that it's ambiguous? The court asked me, is there a fact question? I said, as to Section 10, meaning Section 10 of the lease, there is not a fact issue. What we were focused on at this point was the primary issue before the court, which was a question of law, the interpretation of that phrase in the lease. There was no fact issue that precluded the court from interpreting, from addressing that issue. That was what was framed by my 2615 motion and by their motion for summary judgment. What does this phrase mean? No fact issue. Here's the lease. We agree that this is the lease. We agree this is the term. Judge, tell us what it means. Where the fact issue arises is after the judge decided the case and said not only that their interpretation was correct but that your interpretation is unreasonable, that then an issue arose that requires an evidentiary hearing. At this point, it is unreasonable for us to assume that the judge is going to make the conclusion that our point is not even reasonable such that we would ask for an evidentiary hearing. Your time is up, counsel. You'll get ten additional minutes to reply and respond to the cross-appeal argument. Thank you, Your Honor. Thanks. All right. Mr. Siegel, it's your opportunity to respond and present your cross-appeal. Good morning. Steven Siegel for the Plaintiff, Appellee, and Cross-Appellant Bond-Gilded Marketplace LLC. You have before you a judgment which can and should be sustained on any of three different independent grounds. If the plaintiff prevails on any one of those grounds, the judgment should and must be sustained. CVS, on the other hand, has to defeat all three grounds, has to prevail on all three of them in order to reverse. Those three grounds are, first, that the lease was properly terminated under Section 10 in the exercise of a contractual right to terminate. Second, that even if one assumes that the billboard was a legal nonconforming use, we disagree, but even if you assume it was a legal nonconforming use, that this appeal is moot because the billboard is and was required to be removed because it plainly violates the ordinances of the village passed in 2008 and then must be removed under the village's own four-year amortization period as of May 28th of 2012, an argument that CVS itself advanced and the circuit court actually agreed with. And third, that, in fact, the billboard is, as the Highway Advertising Act provides, unlawful. It is not a legal nonconforming use. It was not a lawful use in 2008 when the ordinances were passed, and so it is illegal and was illegal to maintain it, and the lease was properly terminated. On that basis. Well, on Section 10, can you discuss the language? We're supposed to give the intent, give credence to the intent of the parties in entering into this lease agreement, and tell me how it's not clear and unambiguous that you have to erect a building on the subject property to invoke Section 10. You do need to erect a building on the subject property, and it's our position that that has occurred here. Is that a parking lot as a building? It is part of a unified shopping center complex. It is pertinent to wall structures, and it is sitting right on the site where the billboard is located and actually throughout the demised premises. So it's necessary for the use and enjoyment of the shopping center is what you're saying? It is a part of the shopping center. It is a planned unit development that is a single development. It has wall structures. It has sidewalks. It has parking lots. Under the lease language, if some — let's turn to the lease language. The last sentence of that Section 10 provides that if any portions of the property are not to be utilized for such building, the lessee has the option to use the remaining portions, to move its billboard to the part that's not being utilized for the building. I think that language, which we have to give effect to, imports a utilitarian, practical construction of the lease. That means if, in fact, as the trial court found and as was conceded by counsel below, if they were — under their construction and under that provision, if we were to put a four-wall structure right where the sign stands but to leave some portion of the demised premises undeveloped, they could, under their construction, move the billboard to within an inch of the four-wall structure, even if it would block a door. Could they do that if the city would not give them a permit to move it? If the Advertising Act would not allow them to move it? If IGOT wouldn't let them move it? They could still just say, yeah, I've got this lease here. I'm moving it because of this lease. I mean, when we talk about practicalities, are they really going to be able to put a billboard up within two inches of the front door of a shopping center? I mean, the lease — yeah, the plain language of the lease, I agree. That's pretty much what it says. But, I mean, practically, would they be allowed to do that? I mean, those facts aren't before us. I don't know whether — you know, we haven't taken evidence of what they would permit in a future reconstruction or relocation. But in construing the term of the lease, that is an impossibility. It's unworkable in their construction, their original construction, that this lease, that this billboard has to be a four-wall structure that stands exactly on the side of the billboard. Now, notice, in their reply on appeal, they actually made some significant concessions about that construction, that that was unworkable. In their reply, they state, quote, In appropriate cases, the use of the word building may be construed to include land belonging to the building and appropriate to its use. Unquote. That's the reply at 11. Still on the reply at 11. The purpose of Section 10 is to allow the construction of a commercial or residential building to lesser of specifications on or adjacent to the billboard. Reply at 11. Third, reply at 12. The building need not be on the footprint of the billboard, but adjacent to it. So the argument — — arguments that perhaps a parking lot would be an accessory to a building if the building, or at least part of the building, were on the subject premises. Here we have a building that's on a totally separate property, and you want to put a parking lot on the subject premises as an accessory to a building that's on a separate parking lot. And I think what that language is, and I don't want to speak for counsel, is distinguishing Mung and Fuller, you know, in this situation, where we have a subject property that was subject to this lease, and there's no part of the building on it, except for the parking lot adjacent to the building. Well, I don't think the record, which counsel sought to clear up in the opening portion of his oral argument, factual presentation in the opening portion of his argument sought to clear up, it's actually not so clear on that point, because this point that the billboard is not anywhere on what he calls the barnhouse property was first raised in his reply brief. The billboard or the building? The bill — that the — The billboard's on the barnhouse property. There's no walled structure that is to be — if I said billboard, I misspoke. There's no walled structure to be placed on what he calls the barnhouse property. I mean, he raised that argument for the first time in his reply on appeal. So you're saying it should be forfeited? Well, yes, there is a process to this, and it would not be appropriate to adopt an argument made for the first time in reply on appeal. But the problems with the argument go deeper than that. I mean, first of all, the record simply — you know, the prior position, as I said, is actually that the demise premise, that finger, as you described it, is a part of the barnhouse property. It's not saying it's the whole thing. That was in their brief, opening brief. In page 1, they said, And now they're saying it's the whole thing. In fact, what we can see from the record is that the — if you look at — he included a — if you look at, for example, in our appendix, A131, which I believe is one of the exhibits he showed you, it's an attachment to the — to one of the ordinances, and it shows both Lot 1 and Lot 2 designations on the entire acreage. If you look at that, you will see that in the bottom right-hand corner is Lot 2, and there is a walled structure to be placed there, in fact. And if you look at — there's a — Lot 1 covers most of it, and there is walled structures on that as well. So I don't — I don't think this point, which was raised on reply, on appeal, has been established by any means. But at bottom, I think it's irrelevant. At bottom, the roof, it really doesn't matter whether the walled structure is on precisely the billboard site, which counsel now concedes in the reply, it doesn't have to be precisely on the billboard site after a position throughout litigation that it had to be directly on the billboard site, or on the finger itself, or on the barnhouse property. The building can't be reasonably construed to be only a walled structure. When you are dealing with — and the language of the lease is a commercial building, and here we have a commercial building. It's a shopping center complex, unified, that includes four-wall structures, sidewalks, and parking. Why didn't he draft it and say another structure is appurtenant thereto, or property appurtenant thereto? That would have remedied the problem, wouldn't it? Well, we can look back and think of language that would have maybe given us less to discuss. But I think the important thing is to figure out what was the intent of this Section 10 provision, of this termination provision. What were they trying to do? And it seems to me that what they were trying to do was, one, allow the lessor to improve its unimproved property with the building. Two, allow the lessor to terminate the billboard lease, if that's necessary, to enable the construction. Where the building and the billboard are in conflict, the billboard and the billboard lease must give way. That's the purpose of that provision. So what we're really talking about is we're trying to determine, is there a conflict? And the intent in Section 10 in using the word building is to establish and to determine if the new construction displaces the billboard. And here it does. It indisputably does. Can you cite some cases or legal propositions that direct us into whose favor we're supposed to interpret the lease? Sure. Well, this lease was drafted by Scadran, the original lessee. That's reflected. If you look at the lease, you can see that the name of the lessor of the barnhouses is handwritten in, whereas the lessor is preprinted, and that's true both on the first page and on the second page. So the only reasonable inference is that Scadran is the one who drafted this, and that's the predecessor of CBS. Now, there's also a law that says that you would construe it against the lessor. I guess in this instance perhaps those would offset. It seems to me, though, that a principle that could help in this circumstance is this, and it's in a number of the cases, and that is the principle that if you have two constructions and one is such as reasonable, rational, prudent men would likely make, and the other is one which reasonable, rational, prudent men would not make, you must. It's not that you prefer the rational one. You must adopt the rational one. And I think here, again, the construction actually in application doesn't make any sense. It doesn't make sense that back in 1989 they were intending to enable somebody, but for the intervention of authorities, to construct a billboard an inch away from a four-walled structure. They were intending to ignore the line of Illinois common law construction, which we've cited to you, that the word building may mean a pertinent lens that's necessary to the use and enjoyment. You know, you spend a lot of time arguing this point. I think your argument, I understand the argument. But as I was asking opposing counsel, you may not have to get to that argument about whether or not it contemplates a walled structure if in fact the sign was illegal. Now, to cut to the chase, you made a plausible argument that generally the agency that's required to enforce the statute would give deference by law to its interpretation. And you cited the code. You cited their interpretation, which indicated it's not void ab initio. There's a process that it becomes illegal nonconformity. So what's your response to this argument that the agency, the administrative code, says it's not void? Well, a couple of points. First of all, the language of the statute is clear. If the permit is not renewed within 60 days by the new owner, the permit becomes void. There's no lack of clarity in that. Void does mean null and no effect. There's no dispute about that. But the law becomes void as opposed to is void. He's making an argument about those words. Becomes void through the failure to. After 60 days are you talking about? Yeah, if you do not renew it, it becomes void. There's no further act that's needed. Second, the statute provides in Section 10, makes very clear that a sign without a valid permit is unlawful. It is unlawful. So it's clear that this is an illegality. This is declared by the statute itself to be unlawful. In terms of what you can do with something that's become void, two things. One, the agency, of course, can't. It doesn't have authority to rewrite a statute or to draft regulations that would counter the clear provisions of a statute. And if that's their construction, then that wouldn't be a plausible interpretation of what the agency is doing here. Second of all, there's a line of Illinois cases dealing with attempts to undo things that are void. And you can't do it. We cited you, two of them. The People-Xrell-Tilton v. Mackey, a 1912 Supreme Court case where a license, a corporate license had become void because it wasn't recorded within a two-year period. And it was held that the defect could not be cured by recording after the deadline. ABN-AMRO v. Navarrette, a First District case from 2008 in which an order that was rendered void for lack of a prior bond was held not to be curable.  It cannot be cured. And this one cannot be cured. So we would deem that to be an illegality. And therefore, as counsel conceded, if it's illegal, the lease is terminable. So you're saying basically the rule is if it's not ambiguous, you don't get to the agency's interpretation. That's right. And I don't, you know, the argument that shall maybe is permissive, that void doesn't mean void, I don't think that those arguments carry the day. I think the phrase, if the phrase shall become void is not clear, there are very few statutory provisions that would be deemed to be clear. And then we would have a hard time applying any of these things. That seems pretty clear to me. The fact that the agency reads it this way, reads the statute a certain way, does that create an ambiguity or is that circular reasoning?  I don't think it's established by the way that the agency, you know, has and does in fact read that it can permit a void, you know, resuscitate a void permit. I mean, it's got a general provision about what to do in the instance of various violations. That doesn't mean if they were actually faced with, by the way, I have violated the statute, which they did not tell them when they sought to provide this. They didn't say, you know, they didn't notify that there was a violation that, you know, and this has become void, can you forgive me? You know, I don't think that that's been shown, that the agency in fact has forgiven them and treated this as an ongoing permit. But that's a, that's about a fourth argument down the road. I think that the most important principle is the statute provides that that permit was void. The statute provides that as a result of being void, the sign was illegal. Therefore, it cannot qualify as a legal nonconforming use. It was unlawful in 2008 when the ordinances were passed and it was unlawful when the lease was terminated in 2010. And some subsequent act after termination, after the litigation had started, revives that. Litigation would never come to an end. The termination was valid when done. There's certainly no claim that they had tried to revive this permit when the lease was terminated. It was illegal then and it was properly terminated on that basis. And finally, I would note that even if you, even if you disagreed with all that for some reason, and you thought that the sign was lawful in 2008, by their own argument, this appeal would be moved. Because by their own argument, they said, well, if the ordinance makes this nonconforming, and there's no dispute that the sign does not conform with the ordinance, the ordinance calls for a unified development, not a sign there. In 2008, the ordinances were passed and they told the trial court, we're entitled to a four-year amortization period in all events. We're entitled to at least four years through May 2012. And the trial court agreed that in this instance, it's nonconforming, and therefore, under the terms of the sign code of the village, 5-20-12, that sign, having passed the four-year period from annexation and illegality, shall be removed. Not may be removed, shall be removed. And so... Is that subject to compensation by the city? That's an issue for CBS to take up with the city. They haven't brought the city into this suit. The city's not a partner in this. But you've got a forcible here. You want to forcibly eject them from the premises. That's right. You know, if the trial court ruled that you have that right to forcibly remove the sign, wouldn't that be taking away their... Based on that finding, based on that ruling that it was in violation of the amortization clause, wouldn't that be a taking without compensation? I think that's really an issue for the... I don't agree necessarily. I think it's an issue for CBS to take up with the village, which is just not before us. This is a private party litigation. Their rights to seek just compensation if something is removed... They cite no case that says you can't remove it until you first pay. It's... You know, if anything, it's the removal that gives the right to a payment, if any. You'll have five more minutes. Thank you. Thank you. Mr. Weber? You have ten minutes at this time. I want to clear up the definition problem that counsel raised by citing to the brief. In my brief, I describe this finger here as the bar house property or the subject property. The subject property, though, has the subject premise in it, or the demise premise, which is the portion of the subject property which was going to be leased to Skadden back in 1989. So the lease clause applies to the whole finger. If there's a building on the whole finger that cannot coexist with our sign, then our sign has to come down and they can remove it in 90 days. But there isn't a building on that finger or anywhere near our premise that requires the sign to be removed that can't coexist with it. So I think that's a little misstatement, misdirection to use that language to try and make a distinction before the court when I was merely defining aspects of the subject property. That's in the record that there's no building on that property in that diagram? It's not in the record. At the time, it's not in the record that there's no bond building in this premise. What is in the record is there was a bar house building back here in 1989, but that's gone. So is that diagram accurate or not? Oh, yes, this is an accurate diagram of the property that this was attached to the lease. This is the bar house property. It showed the setback from Grant Road. We are outside the setback. It shows the side yard setback. We are outside the side yard. This is accurate. It doesn't show the bar house property back here, but it shows where the sign is going to go, which was the purpose of the lease. Well, my question is, does the record show that there's no bond building on that property, only a parking lot? No, it doesn't show that. The picture shows that there's no bond property in approximately right here. We can't say whether there's something back here, how far back this goes. Pointing to the top of the finger. I'm sorry. Thank you, Judge. Above the finger or within the finger? Within the finger. There's nothing in the record which indicates there's a bond building there or whether it's beyond the finger and further north. You asked about moot. If CBS prevails, the case is in moot. We get to keep our billboard there. They get to continue to sell space on the billboard. This dispute is over. So there are two people fighting over an issue that if we prevail, we get to keep our billboard there. Now they are saying, really, that, well, the village is going to come in and make you remove the sign. But that hasn't happened. The village has not even written us. They haven't communicated with us. They have said nothing. They're apparently using bond as a stalking horse. I don't want to say they're avoiding just compensation, but they haven't contacted us. The intent. Counsel said rational men. He also pointed out that Skadden probably drafted the lease. Rational billboard people drafting leases aren't going to draft them in such a way that the billboard can come down when somebody decides to build a building on an adjacent piece of property or that is not in conflict with the sign. If you're looking at what rational people were doing when this lease was signed in 1989, look at the billboard company and look at barn houses and consider what would a rational person say as far as when that sign has to be removed and when it can be replaced. Well, to follow up on that argument, if two rational individuals could disagree on the construction of the lease, who should it be construed in whose favor or against who? What's your position on that? Well, we have the presumptions that we've already discussed. The person that drafted the lease, it's construed against them. It's construed against the lessor because you don't want the lessor to be throwing people off the property. In this case, it could probably be neutral. So you go to the dictionary and find the plain meaning of the words. Barn here is blaming and in the court and accusing CBS, but you've got to put their position in context. They back in 2008 signed an agreement with the village. That agreement said that that sign has to be removed. They said in 2009. Now, but Barn did not have the power to remove us by writing a one-page letter terminating the lease at the end of the 20-year term. They failed to notify us terminating the lease. So their failure has now led them to start this type of litigation. So they failed to abide by their own agreement with the village to terminate the lease in 2009 by failing to send a one-page letter. Then they failed to do due diligence. And now they're asking you to overlook their failure. Their due diligence is when they signed that agreement that that sign had to be removed, the village had a four-year amortization ordinance. Yet they agreed with the village that the sign had to be removed in a year. An internal conflict between their ordinance, their zoning ordinance, and the city's general amortization ordinance. Failure to due diligence. Your reply briefs, the language quoted by counsel in your reply briefs seems to indicate that you tend to agree with the fact that a building can be other things other than a four-wall structure if it's used for the use and enjoyment of that building. Do you agree with that? I think I was explaining the cases that he was citing. I believe one was a probate case where if you looked at the language and the intent of the parties, they weren't just conveying the building. That building would be useless without the accessory property. So in the context of that document that they were interpreting, yes, it's reasonable to say that. You're saying in that example it was clear, but in your case you're talking about a wall structure. Yes, I'm looking at the plain words where it says erect a building, construct a building. It doesn't say erect a parking lot. It doesn't say improve by improvements. You have to look at the erect a building. Now, the other thing that Bond has failed to do here is first they agree with the village to violate the village's own ordinance. So you have an ordinance here that says take it out in a year, whereas their general ordinance says it has to stay for four years. Now they're saying take the sign down and you go to the village and you have the village pay just compensation. Are they a stalking horse for the village? How do we know what the village is going to do when this billboard is allowed to remain there? There are a whole bunch of options that the village could do. They have the power to change the law as applies to this sign. They have the power to change the amortization provision. They have the power to say, okay, we won't enforce the law, or they can say, all right, we're going to pay you just compensation. But they cannot speculate as to what the village is going to do and have you assume their speculation is correct. If the case is not moved, we are solving this problem. If the village takes some action, then we can solve that problem. So I'm asking you to please reverse the portion of the judgment below that says that bond cannot or that bond can terminate the lease and to affirm the decision of the judge below that the sign is legal. With regard to legality, I just repeat my statements earlier regarding the regulation and the use of the words and the fact the sign is still there even after we notified IDOT of the change, the sign is still there. So IDOT does not consider it illegal and we complied with the county's billing permit and we got a permit from them. So I ask you to affirm that portion of the order of the court below and we reverse the portion with regard to bond's power to terminate the lease, and thank you. Thank you. Mr. Segal, you have five minutes to give us a brief reply to the subject of the prosecution. Thank you, Your Honor. Just a few points on what was said. As to the village action, the village did in fact take action to enforce its ordinances. It sent a notice to the property owner, that's bond, November 16th of 2010. That's in the record and it's also in the record that on November 17th of 2010, the very next day, that was delivered by bond to the lessee. So the village is not sat on the sidelines. They addressed the property owner and in that notice stated that the billboard must be removed. The village position has been stated on the record and was communicated back in 2010 to the lessee that this is the village's position. There was no lack of clarity on this. As to moodness, the appeal plainly is moot. We cited to you Poulos v. Rita, a case in which during the appeal, the right to possession of the tenant terminated on its terms, and that appeal was held moot. An appeal in a forcible entry action is moot when during that appeal the tenant's right to possession terminates, and that's what has happened here. By their own argument to the circuit court, agreed with by the circuit court, the village ordinance, as of 2008, rendering the billboard nonconforming, and we would contend illegal because it was not that lawful use, but legality in 2008 aside, it rendered it nonconforming and says that four years after annexation such a sign shall be removed. Four years after annexation, passed this spring during the pendency of this appeal, May 2012. They asked the circuit court, let us stay until then at least. The circuit court said, I agree with the section 10 argument, but if I didn't, I would let you stay until May of 2012. That has passed. So a very simple and straightforward ground to sustain this judgment is that this appeal is moot. Their right to possession, even under their own argument, has passed. Would it then still be a legal nonconforming use? If we were to find that it was a legal nonconforming use before the amortization period ended, would it then not still be a legal nonconforming use? If you were to find that it was a legal nonconforming use previously, That it would not, no, because the amortization period is the village way of addressing legal nonconforming uses, and it provides that they should come down in four years. So, no, under the village ordinance, that would have to come down in May of 2012. That's the argument they made to the trial court, and the trial court agreed with them, and it's one of several grounds on which the judgment may be sustained, that under that ordinance, it now, having passed the four years, has to be removed. So there's really no scenario under which this billboard does get to keep standing for 18 more years. It was illegal in 2008 when the ordinances were passed. It had no valid permit. It hadn't had a valid permit for 11 years. And under the statute, the Highway Advertising Act, Section 10, it is unlawful, and therefore, not a legal nonconforming use. But even if you somehow put that to the side and just pretended it was a nonconforming use, four years later, it became illegal because it was subject to the mandatory removal provision of the village ordinance. What would the interplay be between this lawsuit and any compensation that's evacuated? We made the point repeatedly in the trial court that they had never sought to bring the village into this. And they had argued for just, they'd made various arguments about just compensation, but they never sought to bring any kind of proceeding against either in this lawsuit or anywhere, and that's in the record. It's established in the record that there has been no action by CVS against the village. No challenge. The lease clearly gave them authorization to go challenge any ordinance that may be interpreted to prevent their billboard. They've done nothing. And then come back to an appeal, and at the end of the appeal say, well, you know, we're entitled, it can't be moot. I know we made that argument to the trial court that it would happen until May 2012, but now that it's over, it can't be moot because, in fact, we have a right to just compensation before it can be removed. I just don't think that argument can stand. Thank you. Thank you very much, counsel. At this time, the court will take the matter under advisement and render a decision in due course. We stand in recess until the next case.